NATIONAL GRANGE MUTUAL LIABILITY COMPANY, Respondent, *v.* WILLIAM FINO et al., Appellants.

Third Department, March 23, 1961.

*Roy L. Featherstone* for William Fino and another, appellants.

*Thomas F. Saccoman* for Charles Cypher, appellant.

*Michael Nardone* for Erwin Rhodes and another, appellants.

*Ewig & Beck* (*Arthur B. Ewig* and *George A. Beck* of counsel), for respondent.

REYNOLDS, J.   The plaintiff-respondent on July 13, 1957 issued to Erwin Rhodes and Georgiana Rhodes, an automobile garage liability policy of insurance " agreeing to pay on behalf of the insured all sums which the insured shall become legally obligated to pay   *   *   *   caused by accident and arising out of the hazards hereinafter defined ".   Coverage A of the insuring agreements covered, among other things, " bodily injury " and coverage B " injury to or destruction of property ".   Under the definition of hazards, division 1, the respondent covered owned automobiles, and under division 2, covered nonowned automobiles used in connection with the operation of the garage business. The insurance was subject to conditions.   One of these (condition 10) is to the effect that " if claim is made or suit is brought against the insured, the insured shall immediately forward to the company every demand, notice, summons or other process

received by him or his representative "; and (condition 11) " Assistance and Cooperation of the Insured — Coverages A, B and D: The insured shall cooperate with the company and, upon the company's request shall attend hearings and trials and shall assist in \* \* \* securing and giving evidence \* \* \* and in the conduct of suits ".

On December 24, 1957, defendants-appellants William and Laura Fino were injured as the result of a collision between their car and a truck owned by Charles Cypher. With Cypher in the truck was the insured Erwin Rhodes, the garageman. Suit was brought by the Finos against Cypher as owner of the truck. Both Cypher and Rhodes had represented that Rhodes was driving the vehicle at the time of the accident; that he had just completed repairs on the truck and was giving it a road test. This story was related by both Cypher and Rhodes to their insurance companies, to the police officer who investigated the accident, in a report of accident sent to the Bureau of Motor Vehicles and in testimony at a motor vehicle hearing. Cypher impleaded Rhodes for indemnity, in the suit brought by the Finos, on the theory that Rhodes was the active tort-feasor should negligence in the operation of the truck be found. In the verified pleadings connected with this third-party action both parties again stated that Rhodes had been the driver.

National Grange Mutual Liability Company, the plaintiff-respondent in the instant action and Rhodes' insurer under the garagemen's liability policy, undertook to defend Rhodes in the action under the terms of the policy.

In June, 1958, some six months after the accident and institution of the above-described action, during the course of an examination before trial, Rhodes and Cypher admitted that their prior account concerning the identity of the driver was false; that Cypher really had been driving his own truck and that Rhodes had merely been a passenger. Thereafter, over a year later in July, 1959, the Finos commenced a new suit against Cypher and Rhodes on the theory that the former was driving as the agent of the latter. Rhodes did not give respondent the summons in this action until November, 1959. During the interim, between the time of the recantation and institution of the second suit, respondent Rhodes' insurer, took no action. The first suit apparently was still pending, however, long after the institution of the second suit since respondent's lawyer attended a pretrial conference in December, 1959, in connection with the third-party complaint in that action merely to state that respondent was no longer involved with the suit. On December 14, 1959, respondent sent a letter of disclaimer to all the parties and instituted the instant action in March, 1960.

In this declaratory judgment action the respondent obtained an order of summary judgment in its favor, and thereby has been released from any obligation to defend any actions against its insured or Cypher and is held not liable for any judgments that may arise out of the subject automobile-truck accident. The basis of the judgment was a finding, as a matter of law, that the insured had breached a condition of the policy, the co-operation clause of the insurance contract. The Finos appeal, contending that there was a question of fact as to whether or not there was a breach of the co-operation clause in the contract between respondent and Rhodes; that respondent has waived the alleged defense; that respondent has shown no prejudice; that, in any event, the provisions of article 7 of the Vehicle and Traffic Law, the "Safety Responsibility Act" mandate that respondent may not use a breach between it and its insured to escape liability to them, the innocent victims.

1. There is no doubt but that the insured's conduct in giving false evidence was, as a matter of law, a breach of the condition requiring co-operation (*United States Fid. & Guar. Co.* v. *Von Bargen*, 7 A D 2d 872, affd. without opinion 7 N Y 2d 932; *Lumbermens Mut. Cas. Co.* v. *Goldwasser*, 7 A D 2d 849). No question of fact existed.

2. The lack of prejudice to the insurer is immaterial in a situation where there has been a breach of a condition. (*Coleman* v. *New Amsterdam Cas. Co.*, 247 N. Y. 271.)

3. Whether the respondent waived the defense of breach of condition must be answered, of course, by examining its actions and conduct subsequent to the time knowledge of the false information was gained. Although waiver or estoppel was not pleaded, we prefer to treat this facet of the case on the merits. In connection with the first action brought by the Finos against Cypher who impleaded Rhodes thus bringing respondent in to defend, there was no reason for it to take any affirmative action of disclaimer following the change in the story as to who was driving. The new set of facts exonerated them from any obligation inasmuch as Rhodes, the insured could no longer be a third-party defendant. After the recantation there was no contract obligation or any other obligation toward the insured since it was simply a case of noncoverage. There is no question of waiver where there is no coverage (*Gerka* v. *Fidelity & Cas. Co. of N. Y.*, 251 N. Y. 51). The duty to disclaim arose only after the institution of the second suit against Cypher on the theory that Cypher was Rhodes' agent. The letter of disclaimer was sent to the parties within a month from the time respondent was made aware of the second suit by the transmittal of the summons. As to this second action the duty to disclaim was

promptly and adequately performed and there was no waiver. There is no serious claim of estoppel herein or any facts upon which to base such a claim.

4. Appellants finally contend that not being insureds under respondent's policy, but merely victims of the accident, that any defense the insurer may have against the insured does not concern them by reason of article 7 of the Vehicle and Traffic Law. Section 345 (subd. [i], par. [1]) (former § 94-q, subd. [i], par. [1]) of this article provides that the insurer's liability becomes absolute whenever loss covered by the policy terms occurs and that any defenses the insurer may have against the insured cannot defeat the right of the victims. Assuming that the principal-agent theory of the second action brings the situation within policy coverage there is no basis for appellants' contention because (1) section 345 (formerly § 94-q) applies only to policies required by the '' Safety Responsibility Act '' and not to those under the Financial Security Act. (2) The New York Financial Security Act does not provide for absoluteness. (3) In any event, the policy coverage here pertains to vehicles used in connection with garage business and not to those owned by Rhodes, ownership being prerequisite for application of the Financial Security Act.

It was settled law before 1957 that then article 6-A of the Vehicle and Traffic Law, '' The Safety-Responsibility Act '', applied only to uninsured motorists who were involved in accidents; that then section 94-q pertained only to those policies taken in pursuance of the article the purpose of which was to protect the victims of the uninsured accident and prohibit the motorist from using the road until he posted proof of insurance which acted to protect possible future victims. The provision barring defenses by the insurer against the insured in section 94-q pertained *only* to those policies issued pursuant to the article and had no effect as to insurer's defenses in a situation where the motorist was voluntarily insured at the time of the accident. (*Cohen* v. *Metropolitan Cas. Ins. Co. of N. Y.*, 233 App. Div. 340 [4th Dept.]; *Hartford Acc. & Ind. Co.* v. *Breen*, 2 A D 2d 271 [3rd Dept.]; see 27 N. Y. U. L. Rev. 817, 821.)

In 1956 the Safety Responsibility Act was made article 6-B and was not materially changed. New article 6-A was enacted and called the '' Motor Vehicle Financial Security Act ''. This provided for compulsory insurance for *all* motorists making it mandatory that proof of insurance be submitted before vehicles could be registered. This law became effective February 1, 1957. At present, under the new revision of the Vehicle and Traffic Law (L. 1959, ch. 775, eff. Oct. 1, 1960) the Financial

Security Act is article 6 and the Safety Responsibility Act is article 7, but the provisions remain materially unchanged.

Subdivision 4 of section 93-a (now § 311) of the Financial Security Act not only does not provide for absoluteness, but evinces indications that policies were not to be considered absolute in that it provided: "The superintendent before promulgating such regulations or any amendment thereof, shall consult with all insurers licensed to write automobile liability insurance * * * and shall not prescribe minimum provisions which fail to reflect the provisions of automobile liability insurance policies, other than motor vehicle liability policies *as defined in section ninety-four-q of this chapter*" (emphasis added). It is thereby evident from this positive distinction that it was not intended that the absolute provisions of section 94-q of the Safety Responsibility Act were to apply to the requirements of the Financial Security Act. This indication plus the fact the Legislature did not specifically make policies absolute in the new act plus the unrepealed provisions of section 167 of the Insurance Law, recognizing the insurers' defenses (subdivision 5 of section 167 allows for the defense of non-co-operation), point to the fact that it was not intended that the policies required under the Financial Security Act should be absolute. It was also noted that the Superintendent's regulation 35 "Minimum Provisions for Automobile Liability Insurance Policies" included the following (subd. 3): " (f) That no action shall lie against the insurer unless the insured shall have complied with all the terms of the policy" (N. Y. Off. Comp. of Codes, Rules & Regulations [12th Supp.], p. 698).

The New York Financial Security Act fulfills its purpose of protecting innocent victims only to the extent that insurance is made compulsory. It does not go further and make it absolute. Even if the Financial Security Act provided for absoluteness, there is serious doubt that this garagemen's policy insofar as it covers the use of nonowned vehicles is subject to the New York Financial Security Act or any financial responsibility laws as the New York act continually refers to "owner's policy of liability insurance". The instant policy in reference to Financial Responsibility Law requires compliance therewith "with respect to any automobile owned by the named insured". Coverage would exist herein not because of ownership but because the vehicle, no matter who its owner, was allegedly used in connection with the garage business.

The judgment and order should be affirmed.

BERGAN, P. J., COON, GIBSON and HERLIHY, JJ., concur.

Judgment and order affirmed, without costs.